UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

UNITED STATES OF AMERICA     )
                               )
          vs.                )    CAUSE NUMBER 3:10-CR-56 RM
                               )
JAMES A. SIMON(01)        )

OPINION AND ORDER

On October 8, the court denied James Simon's motion to suppress in all respects except to the extent he contended that the search warrant was executed unreasonably and that seized items weren't returned to him promptly. The court assumes the reader's familiarity with that opinion (Doc. No. 62). The court heard evidence and argument on the remaining aspects of the suppression motion on October 19, and now denies Mr. Simon's suppression motion in its entirety.

Internal Revenue Service agents executed a search warrant at the home of James and Denise Simon on November 6, 2007. The house is about 4,000 square feet with a finished full basement. Given the size of the house and the nature of the items being sought, eleven agents participated in the search, including case agent Paul Muschell, two computer specialists, and an inventory custodian. All the agents were armed and wore body armor and flak jackets. When the agents arrived, those present at the house were Denise Simon, the Simons' daughter, and Joyce Jones, who was there to drive the Simons's daughter to school. The agents explained why they were there. At the agents' urging, Mrs. Simon told Ms. Jones to take the daughter to school. Mrs. Simon then telephoned her husband, who

was in the Ukraine, and told the agents that she wanted to wait for her attorney to arrive. The agents had no objection, and attorney Robert Nicholson (who deals in business law rather than criminal law) arrived about an hour later. Mr. Nicholson and Mrs. Simon spent most of the day with agents in the kitchen, though they also went to lunch and occasionally stepped out to Mr. Nicholson's car for private conversation.

The computer specialists struggled with imaging some of the computers and computer-related devices, and eventually obtained Mr. Nicholson's assent to taking those items with them rather than spending more time at the Simons' residence. When the agents told Mrs. Simon and Mr. Nicholson that they had packed up what they were going to take and were ready to go, they gave Mrs. Simon a computer-generated inventory of the items they had seized. Mrs. Simon and Mr. Nicholson wanted to examine what was being taken and verify the inventory, so the agents took them to Special Agent Muschell's car, where the items were packed. They discovered that the inventory didn't list a computer Mr. Nicholson had okayed for taking, so that computer was hand written onto the inventory. Some of the items on the inventory were packaged already, so Mrs. Simon and Mr. Nicholson couldn't see precisely what was in each package. Mrs. Simon noticed that the agents had seized business records related to her daughter's photography business — records that weren't covered by the search warrant — so the agents left those records with Mrs. Simon. Special Agent Muschell later noticed that some of the seized Simons' financial records fell

outside the tax years covered by the warrant, and those records were returned to Mr. Nicholson about a week after the search. The agents left the premises around 5:00 p.m. with 52 items, including computers, computer-related devices, and financial documents.

On November 9, Special Agent Matthew Fabina, who had participated in the search as a computer specialist, notified Mr. Nicholson that the IRS was done with the computer and USB external hard drive (items 51 and 52 on the inventory) that had been taken for imaging with Mr. Nicholson's okay. Mr. Nicholson picked up the computer and hard drive on November 13. The IRS didn't return any of the other seized computer equipment until May 2009, when Mr. Simon and his attorney asked for it. Even then, the agents inadvertently kept a thumb drive which wasn't readable; that drive had been stored with the paper documents rather than the computer items. The agents believe that drive must have been with the documents when the agents allowed Mr. Simon's attorney to take the documents for copying.

Mr. Simon contends that the execution of the warrant and the retention of the seized items were unreasonable, so the items seized should be suppressed. Mr. Simon cites no cases and so proffers no standard by which to weigh the reasonableness of the warrant's execution or the items' retention.

In deciding whether a search is reasonable under the Fourth Amendment, the court examines the totality of the circumstances, balancing the degree of the intrusion into the defendant's privacy interests against "the degree to which [the

search] is needed for the promotion of legitimate governmental interests." <u>United States v. Knights</u>, 534 U.S. 112, 118-119 (2001). No heightened standard of probable cause or reasonableness governs residential searches pursuant to search warrants, *see, e.g.*, <u>United States v. Jones</u>, 54 F.3d 1285, 1289-1290 (7th Cir. 1995); <u>United States v. Stone</u>, 471 F.2d 170, 175 (7th Cir. 1972), and the court already has determined that the warrant was supported by probable cause and identified the items to be seized with sufficient particularity. "[A] search does not need to be the least intrusive alternative to be constitutionally valid, it simply has to be reasonable." <u>Shell v. United States</u>, 448 F.3d 951, 956 (7th Cir. 2006). This is not an instance in which force was used on the house's residents or in which the agents failed to knock and announce, *compare* <u>Wilson v. Arkansas</u>, 514 U.S. 927, 934 (1995), or in which the agents invited newspersons to watch, *compare* <u>Wilson v. Layne</u>, 526 U.S. 603, 604 (1999), so if unreasonableness is to be found, it must be unreasonableness borne of circumstances less commonly seen in reported cases.

Given the house's size and the warrant's scope, there seems nothing facially unreasonable about the number of agents who executed the warrant or the time it took for them to do so. In any event, there are no case citations before the court suggesting that execution of a warrant becomes unreasonable (triggering the exclusionary rule) if too many law enforcement agents engage in the search. It may well be that a search warrant wouldn't support holding a premises for a week-long search under most circumstances, but that isn't what happened here.

The agents waited for Mrs. Simon's attorney to arrive, at her request, cut the search short by temporarily taking a computer they had trouble imaging, and stayed longer than they wanted so that Mrs. Simon and Mr. Nicholson could see what they had seized. Nor does the agents' protective gear seem intrinsically unreasonable.

No authority before the court supports the proposition that the government can overstay its constitutional welcome to seized evidence by keeping it too long, especially when, as in this case, the defendant made no request for its return.

Mr. Simon has shown that the search warrant was executed by a lot of agents, who wore a lot of protective clothing, who took a long time to conduct the search, and who kept some of the seized items for a long time. He has not shown that there were too many agents, or too much protective gear, or that the search took too long, or that the items were kept too long, so as to make the search unreasonable. The court denies the remainder of his motion to suppress (Doc. No. 37).

SO ORDERED.

ENTERED:  October 20, 2010

   /s/ Robert L. Miller, Jr.
Judge
United States District Court