UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

UNITED STATES OF AMERICA     )
                             )
          vs.                )     CAUSE NO. 3:10-CR-56(01)RM
                             )
JAMES A. SIMON               )

<u>OPINION and ORDER</u>

Defendant James Simon was convicted of 19 of the 23 counts charged in the indictment, following a six day jury trial in November. The government now seeks forfeiture as a criminal sanction under 18 U.S.C. §§ 981(a)(1)(C) and 982(b) and 28 U.S.C. § 2461(c). For the following reasons, the court denies the motion for forfeiture.

Pursuant to Fed. R. Crim. P. 32.2, the parties agreed that the court should resolve the forfeiture issue, and that an evidentiary hearing was unnecessary. A hearing was held on December 9 after Mr. Simon contested the forfeiture.

In his brief and at the hearing, Mr. Simon argued that: (1) forfeiture was inappropriate with respect to Counts 13, 14 and 16 because he was acquitted of those charges; (2) the offenses charged in Counts 20-23 (fraud involving federal financial aid) aren't subject to forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 1956(c)(7); and (3) he wasn't charged with conduct violating the RICO statute, so 18 U.S.C. § 1961(1) (defining "racketeering activity" to include offenses under 18 U.S.C. § 1341 (mail fraud)) isn't applicable in this case and can't be used as a basis for forfeiture with respect to Counts 9-19. Mr. Simon also argued that forfeiture is inappropriate because there are no "proceeds" to forfeit (the awards

were deducted from the amount of tuition owed); and restitution, not forfeiture, is the appropriate remedy when, as here, the federal government isn't a victim, and Culver and Canterbury (the hoodwinked schools) haven't acknowledged or sought to recover any loss.

The government conceded that the federal financial aid offense charged in Counts 20-23 isn't an offense constituting "specified unlawful activity" within the meaning of 18 U.S.C. §§ 981(a)(1)(C) and 1956(c)(7), and that forfeiture is inappropriate and should be denied with respect to those counts. But it maintains that forfeiture is appropriate with respect to the mail fraud counts of conviction (Counts 9-12, 15, and 17-19) because mail fraud is one of the offenses listed in 18 U.S.C. § 1961(1) and so falls within the forfeiture statute's definition of "specified unlawful activity."

18 U.S.C. § 981(a)(1)(C) provides for civil forfeiture of any real or personal property that "constitutes or is derived from proceeds traceable to" an offense constituting "specified unlawful activity," as 18 U.S.C. § 1956(c)(7) defines that term. Section 1956(c)(7) defines "specified unlawful activity" to include "any act or activity constituting an offense listed in [18 U.S.C. §] 1961(1)," and § 1961(1) (a part of the RICO statute), in turn, lists 18 U.S.C. § 1341 (relating to mail fraud) as an offense. *See* United States v. Sulvious, 512 F.3d 364, 369 (7th Cir. 2008) (civil forfeiture of the proceeds of basic mail fraud permitted under 18 U.S.C. § 981(a)(1)(C)). "If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized…

[and] [i]f the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case pursuant to Federal Rules of Criminal Procedure and section 3554 of title 18, United States Code." 28 U.S.C. § 2461(c). The government thus has authority under 28 U.S.C. § 2461(c) to seek criminal forfeiture for the offense of mail fraud. United States v. Venturella, 585 F.3d 1013, 1016 (7th Cir 2009); *see also* United States v. Black, 526 F.Supp.2d 879, 876-878 (N.D. Ill. 2007).

The government seeks forfeiture with respect to only the counts of conviction (Counts 9-12, 15, and 17-19), in the total amount of $89,600. Mr. Simon maintains that restitution, not forfeiture, is the appropriate remedy in this case, but the court isn't prohibited from ordering both restitution and forfeiture. United States v. Venturella, 585 F.3d at 1019-1020; United States v. Emerson, 128 F.3d 557, 566-567 (7th Cir. 1997). "[F]orfeiture seeks to punish a defendant for his ill-gotten gains by transferring those gains . . . to the United States Department of Justice," United States v. Emerson, 128 F.3d at 567-568, "while restitution seeks to make the victims whole." United States v. Venturella, 585 F.3d at 1019-1020; *see also* United States v. Vera, 278 F.3d 672, 673 (7th Cir. 2002) (*in personam* forfeiture is a criminal sanction).

While criminal forfeiture generally may be appropriate in mail fraud cases, it remains to be determined whether it is appropriate in this case. To prevail, the government must prove by a preponderance of the evidence that the amounts in question are "proceeds traceable to" the mail fraud offenses. 18 U.S.C. §

3

981(a)(1)(C) and 28 U.S.C. § 2461(c). *See* <u>United States v. Vera</u>, 278 F.3d at 673. The government hasn't met that burden.

The government argued that the Simons' income was the most important factor in Culver Academies' and Canterbury School's decision to award the Simons need-based financial aid. But it presented little, if any, evidence to support that conclusion, and, indeed, acknowledged that it couldn't prove the Simons wouldn't have received any need-based financial aid from Culver or Canterbury had they reported their income honestly.

The only evidence presented at trial with respect to the financial aid awards at issue in Counts 9-12, 15, and 17-19 came from Culver Academies Director of Financial Aid and Assistant Director of Admissions Scott Joyner and Canterbury School's business manager Jerry Belcher.

Mr. Joyner testified that Culver uses the School and Student Services, a service of the National Association of Independent Schools (NAIS), to help assess a family's ability to pay school costs, and that 34 percent of Culver Academies' students receive need-based financial aid. Parents applying for financial aid complete a Parents' Financial Statement and submit it to School and Student Services, which calculates the family's financial need, estimates how much the family should be expected to pay, and sends a report of family contribution to Culver. Mr. Joyner then compares the report with the family's tax returns and W-2s to confirm the information, and determines the amount of financial aid awarded based on that information and how well-rounded the student's file is

academically and otherwise. Mr. Joyner testified that he questioned the accuracy of the Simon applications after learning from the children's merit scholarship applications that they were engaged in costly extra-curricular activities and foreign travel, and so used a lower percentage in determining the amount of need-based aid awarded, but he didn't identify the year in which that occurred. If Culver had an income cap on eligibility, Mr. Joyner didn't identify what that cap was, or which factors he deemed most important in determining whether the Simon children received financial aid for any given year.

Mr. Belcher testified that Canterbury School also uses the School and Student Services provided by the National Association of Independent Schools in administering its need-based financial aid program. At Canterbury, a committee, rather than an individual, compares the Parents' Financial Statement to the NAIS standards and determines if the family is eligible for aid, what funding is available, and how much aid to award. Mr. Belcher testified that the Simon children received a total of $5,000 in need-based financial aid for the 2004-2005 academic year, but that he had no personal knowledge about how the awards were determined because he didn't start working at Canterbury School until June 2005, after the financial aid determinations for the 2004-2005 academic year were made.

While both Culver Academies and Canterbury School considered the information contained in the Parents' Financial Statements in determining need-based aid, the court cannot find on the basis of the limited evidence before it that the Simons wouldn't have received need-based financial aid from either school for

the years in question, if they'd reported their income honestly. Nor can it identify how much of the awards they received was attributable to, or the "proceeds of", mail fraud, and what portion was attributable to other factors.

Accordingly, the court DENIES the government's motion for forfeiture.

SO ORDERED.

ENTERED:    December 21, 2010

_____/s/ Robert L. Miller, Jr._____
Judge
United States District Court